IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                    PLAINTIFF

vs.                              Case No. CV 11-3057

LEGAL AID OF ARKANSAS                          DEFENDANT

### AFFIDAVIT OF W. MARSHALL PRETTYMAN

**STATE OF ARKANSAS**     )
                                   )ss.
**WASHINGTON COUNTY** )

       COMES NOW, the undersigned, W. Marshall Prettyman, after first being duly sworn, states as follows, to wit:

       1.      I am an attorney, employed by Legal Aid of Arkansas and serve as its Director of Litigation. I am familiar with the above matter and, among other individuals, personally dealt with Mr. David Stebbins regarding his request for legal services regarding an appeal against Harp & Associates (the "Appeal").

       2.      Legal Aid of Arkansas receives a large portions of its funding from the federal government pursuant to the Legal Services Corporation Act ("LSCA"). 45 C.F.R. § 1600 et seq. To qualify for funding under the LSCA, Legal Aid of Arkansas must comply with its regulations. 45 C.F.R. § 1600 et seq.

       3.      Attached hereto, as Exhibit G1, is a copy of the LSCA regulations regarding taking an appeal. As stated therein, these regulations discourage Legal Aid of Arkansas from taking frivolous appeals, require giving consideration to proper allocation of resources before taking on any case, and prohibit taking cases that interfere with an attorney's professional responsibilities to a client.

       4.      Attached hereto, as Exhibit G2, is a copy of Legal Aid of Arkansas' internal policy

**EXHIBIT G**

concerning taking an appeal on behalf of a client. This policy mirrors the LSCA regulations.

5. Attached hereto, as Exhibit G3, is a copy of Legal Aid of Arkansas' policy entitled Case Acceptance Priorities, which sets forth the guidelines Legal Aid of Arkansas uses in evaluating whether to represent an individual in any matter.

6. Attached hereto, as Exhibit G4, is a letter I wrote to Mr. Stebbins setting forth the reasons Legal Aid of Arkansas could not represent him in his Appeal.

7. Attached hereto, as Exhibit G5, are applicable Arkansas Rules of Professional Conduct, Rules of Civil Procedure, and Rules of Appellate Procedure which, based on my opinion, prevented Legal Aid from representing Mr. Stebbins in his Appeal.

8. In evaluating whether to accept Mr. Stebbins' request for representation regarding the Appeal, I considered the above regulations, policies, and rules. As equally important, part of my evaluation included the fact that, at the time of Mr. Stebbins' request for representation, there was no final order on the underlying case, thus, Mr. Stebbins had no right to appeal the case.

9. As reflected by the letter, Exhibit G4, based on the above considerations, I came to the conclusion that to represent Mr. Stebbins in his Appeal, it would be a waste of Legal Aid of Arkansas' time and resources, a violation of LSCA regulations, a violation of Legal Aid of Arkansas' policies, contrary to Rule 2 of the Arkansas Rules of Appellate Procedure and to Rule 11 of the Arkansas Rules of Civil Procedure to file an appeal without good cause, and a breach of Arkansas' Rules of Professional Conduct to represent Mr. Stebbins in one matter while he is currently suing Legal Aid of Arkansas in another, potentially negatively impacting the legal services provided to Mr. Stebbins. For these reasons, Legal Aid of Arkansas declined to represent Mr. Stebbins in his Appeal.

FURTHER, AFFIANT SAYETH NOT.

Dated this 20th day of March, 2012

_____
W. Marshall Prettyman

## VERIFICATION

STATE OF ARKANSAS      )
                       )ss.
WASHINGTON COUNTY      )

I, W. Marshal Prettyman, certify that the facts contained in the foregoing document are true and correct to the best of my knowledge, information and belief.

_____
W. Marshall Prettyman

Subscribed and sworn to before me this 20th day of March, 2012.

_____
Notary Public

My Commission Expires:

05-20-2013

3

**45 CFR Ch. XVI (10-1-03 Edition)**

## PART 1605—APPEALS ON BEHALF OF CLIENTS

Sec.
1605.1  Purpose.
1605.2  Definition.
1605.3  Review of Appeals.

AUTHORITY: Secs. 1007(a)(7), 1008(e), 42 U.S.C. 2996f(a)(7), 2996g(e).

SOURCE: 41 FR 18513, May 5, 1976, unless otherwise noted.

§ 1605.1  Purpose.

This part is intended to promote efficient and effective use of Corporation funds. It does not apply to any case or matter in which assistance is not being rendered with funds provided under the Act.

§ 1605.2  Definition.

*Appeal* means any appellate proceeding in a civil action as defined by


EXHIBIT G1

Legal Services Corporation

law or usage in the jurisdiction in which the action is filed.

### § 1605.3 Review of Appeals.

The governing body of a recipient shall adopt a policy and procedure for review of every appeal to an appellate court taken from a decision of any court or tribunal. The policy adopted shall

(a) Discourage frivolous appeals, and

(b) Give appropriate consideration to priorities in resource allocation adopted by the governing body, or required by the Act, or Regulations of the Corporation; but

(c) Shall not interfere with the professional responsibilities of an attorney to a client.

## PROGRAM POLICY
## APPEALS ON BEHALF OF CLIENTS
## 45 CFR 1605

This policy is intended to promote efficient and effective use of LAA funds, but does not apply to any case or matter in which assistance is not being rendered with funds provided under the LSC Act. The policy is to: (a) discourage frivolous appeals, and (b) give appropriate consideration to priorities in resource allocation adopted by the Legal Aid of Arkansas Board of Directors, or required by the LSC Act or regulations, but (c) shall not interfere with the professional responsibilities of an attorney to a client.

Each case considered for appeal must be reviewed and approved by the Executive Director, or designee, prior to its acceptance. The assigned attorney shall submit an "Appeal Request Form" to the Executive Director, or designee, and shall include all information requested, particularly deadlines for appeal. If approved, a copy of the "Appeal Request Form" shall be made part of the case file and an additional copy shall be kept in a master file. An additional Client Retainer Agreement must be executed, designating the case as an appeal and the lower court's cause of action and disposition of the case.

_Stacy Reed, Secretary_
Stacy Reed, Secretary

July 17, 2004
Date Passed

EXHIBIT G2

# Legal Aid of Arkansas, Inc. 2011 Case Acceptance Priorities

The mission of Legal Aid of Arkansas (LAA) is to champion equal justice for low-income individuals and communities and to remedy the conditions that burden and marginalize them. LAA endeavors to be a key partner in Arkansas's efforts to reduce poverty and provide equal access to the justice system. LAA seeks to provide high quality, courteous, and effective legal services to low-income families and individuals facing serious threats to their personal, economic, or family stability. LAA also collaborates with community partners to identify and respond to problems faced by low-income communities.

Our strategic focus is to provide support for families; preserve the home; maintaining economic stability; ensure safety, stability, and health; and to address the needs of populations with special vulnerabilities, always being mindful of problems that uniquely or disproportionately affect distinct and significant segments of the eligible client population.

A top priority to shape our work is to maximize benefit to the low-income community and achieve the most meaningful results with the resources available. Current outcome measurements indicate LAA is doing a good job of achieving results for individual clients. We know need to address the broader challenges and problems that affect large numbers of low-income people. To effectively and efficiently use our limited resources we must increase the impact of our representation so that it benefits more people in the low-income community.

Delivery issues of services are an integral part of the priority process. One primary goal of the LAA Strategic Plan for 2011-2015 is to **Develop and Implement New or Alternative Service Delivery Models.** We need to maximize the use of available technology in screening, researching and addressing client needs. It is considered a high priority to provide centralized seamless intake through the Helpline as well as in targeted communities through Outreach service delivery models, including community based satellite offices, Medical-Legal Partnerships, and other remote delivery models. We recognize that community and legal education, pro se representation and other forms of self-help can reduce the need for legal intervention, maximizing limited resources. A high priority is placed on involving the entire community in assuming and sharing responsibility for equal access to justice. Special attention will be given to involvement of the private bar in the provision of pro-bono client representation and in the training of staff, volunteers, and clients.

To provide assistance to eligible clients with legal problems that would not be considered for full representation, LAA staff may provide advice, brief services and referral on any eligible applicant. Our goal is to provide clients with quick access to information or legal advice and information about their rights even though the resources of the program do not permit full representation. Another goal of this priority is to provide effective and quick referral to other sources of assistance for clients, keeping in mind that they need instruction and guidance3 to access resources that enhance their opportunities.

Case acceptance for extended/full representation, including negotiation or litigation, will be made as set forth herein. Extended/full representation refers to services beyond the provision of advice, brief services or referral provided during the intake process. The goal of this priority

Board Approved March 26, 2011  Page 1

EXHIBIT G3

## Legal Aid of Arkansas, Inc. 2011 Case Acceptance Priorities

is to address the most pressing client or community needs that cannot be resolved without legal representation.

Full representation may involve intervention or negotiation with a third party; preparation of documents; representation in court or at administrative hearings; appellate practice; systemic advocacy; or legislative and administrative rule-making, as permissible. After evaluation, it may be determined that the nature of a case warrants only counsel and advice. Full representation may also involve transactional work on behalf of a group or individual or community economic development work.

LAA's priorities consist of six core areas: Access to Safe and Affordable Housing; Barriers to Employment; Protection from Domestic Violence; Delivery of Services to Marginalized Communities; Public Benefits, Health Care Access and Education; and Consumer Rights. In addition, LAA may provide specialized services to address the needs of certain populations, such as persons age sixty and over and persons with disabilities. Services for these populations may depend on the availability of grant funds for that purpose.

Grants received by LAA are utilized to fund activities that are fully consistent with Priorities. Where a grant expands client income eligibility or requests additional services in certain types of cases or matters not prohibited by law, LAA will provide the services contracted for by the funder.

When evaluating whether to commit resources for full representation, LAA will consider whether:
1. There is a likelihood of success on the merits.
2. The time required to address the problem is reasonable considering the legal issues, the amount in controversy, and the impact on the client or client community.
3. The applicant's ability to benefit from advice or legal information is limited by factors such as disability, illness, mental impairments, age or limited English proficiency.
4. There are sufficient staff resources available for effective representation.
5. There are other resources available in the community to address the problem.
6. There are significant adverse consequences for the client or client community if no LAA legal assistance is provided or significant benefits for the client or client community if assistance is provided; and
7. The problem is common or systemic in nature and representation will benefit a significant number of clients.

LAA case handling staff has been assigned to one of the six core areas listed below, creating substantive work groups. Each group has prepared a proposed work plan, which is attached hereto and incorporated herein by reference. The areas of focus are as follows:

September 6, 2011

David Stebbins
1407 N. Springs Rd.
Apt. #5
Harrison, Ar. 72601

Dear Mr. Stebbins:

    I have been referred your fax of September 3, 2011. In the fax you request our assistance on a appeal you feel may be necessary from a detainer action. Please be advised that as required by the federal Legal Services Corporation we have a strict policy as to when we take an appeal. That policy does not provide for us to take appeals where we were not the attorneys at the trial level. As such, your case would not qualify. Additionally, the matter is not ripe for appeal. You have asked us to help you with an appeal of the possession hearing in a detainer action. That is not the final hearing. Indeed if you read the second to last paragraph of the judges decision, it makes it clear that the final hearing will be scheduled some time in the future. It would only be after that hearing the matter would be ripe for appeal.

    There is an additional equally compelling reason we cannot assist you with any appeal. You have filed a suit against Legal Aid of Arkansas. While we have yet to be served, we have been made aware of the filing. It would be a clear conflict of interest to take any case for you at the same time as you are bringing an action against us.

    Finally, you seem to believe since we have represented you in the past, we are some how on permanent retainer. Please be advised that we do not work that way and indeed under the Legal Services Corporation regulations and the priorities set by our Board of Directors, cannot work that way. Each separate legal problem must be the subject of a new application and evaluated in light of our priorities. We have far more applications for services that we have the capacity to handle. And in the present political climate, with continued cuts in domestic programs, we are more likely to be limiting the number of cases we take, rather than expanding. If and when you make an application for services, that application will be considered in light of our priorities at the time of your application. However, at present you have no active case or application with this agency. Further, for the reasons stated above, we will not be able to represent you should you seek to appeal Judge Webb's decision regarding possession.

Very truly yours,

Legal Aid of Arkansas

By:_____
    W. Marshall Prettyman, Esq.
    Director of Litigation



EXHIBIT G4



Arkansas Code of 1987 Annotated Official Edition Court Rules 2012
(c) 1987-2012 by the State of Arkansas
All Rights Reserved.

*** Rules current with opinions posted through January 23, 2012 by the Arkansas Supreme Court and the Arkansas Court of Appeals ***
*** Annotations are current through January 25, 2012. ***

RULES OF CIVIL PROCEDURE
ARTICLE III. PLEADINGS AND MOTIONS

*ARCP Rule 11*   (2012)

Review Court Orders which may amend this Rule.

Rule 11. Signing of pleadings, motions, and other papers; sanctions.

(a) Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and that it complies with the requirements of Rule of Civil Procedure 5(c)(2) regarding redaction of confidential information from case records submitted to the court. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(b) A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (a). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

**HISTORY:** Amended July 1, 1986, effective September 15, 1986; amended November 18, 1996, effective March 1, 1997; amended October 23, 2008, effective January 1, 2009

**NOTES:** REPORTER'S NOTES TO RULE 11:
1. With minor changes, Rule 11 is substantially identical to *FRCP 11*. Omitted from Rule 11 is the provision in the Federal Rule which abolished the old equity rule as to quantum of proof required where an answer is under oath. Arkansas has not followed this rule; therefore, there is no need to have a provision which abolished it.





Arkansas Code of 1987 Annotated Official Edition Court Rules 2012
(c) 1987-2012 by the State of Arkansas
All Rights Reserved.

\*\*\* Rules current with opinions posted through January 23, 2012 by the Arkansas Supreme Court and the Arkansas Court of Appeals \*\*\*
\*\*\* Annotations are current through January 25, 2012. \*\*\*

RULES OF APPELLATE PROCEDURE -- CIVIL

*Ark. R. App. P. Civ. Rule 2*   (2012)

Review Court Orders which may amend this Rule.

Rule 2. Appealable matters; priority.

(a) An appeal may be taken from a circuit court to the Arkansas Supreme Court from:

(1) A final judgment or decree entered by the circuit court;

(2) An order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action;

(3) An order which grants or refuses a new trial;

(4) An order which strikes out an answer, or any part of an answer, or any pleading in an action;

(5) An order which vacates or sustains an attachment or garnishment;

(6) An interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused;

(7) An interlocutory order appointing a receiver, or refusing to wind up a pending receivership or to take the appropriate steps to accomplish the purposes thereof, such as directing a sale or other disposal of property held thereunder;

(8) An order which disqualifies an attorney from further participation in the case;

(9) An order granting or denying a motion to certify a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure;

(10) An order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official;

(11) An order or other form of decision which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties in a case involving multiple claims, multiple parties, or both, if the circuit court has directed entry of a final judgment as to one or more but fewer than all of the claims or parties and has made an express determination, supported by specific factual findings, that there is no just reason for delay, and has executed the certificate required by Rule 54(b) of the Rules of Civil Procedure;

(12) An order appealable pursuant to any statute in effect on July 1, 1979, including *Ark. Code Ann. § 16-108-219* (an order denying a motion to compel arbitration or granting a motion to stay arbitration, as well as certain other orders regarding arbitration) and § 28-1-116 (all orders in probate cases, except an order removing a fiduciary for

failure to give a new bond or render an accounting required by the court or an order appointing a special administrator); and

(13) A civil or criminal contempt order, which imposes a sanction and constitutes the final disposition of the contempt matter.

(b) An appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment. An appeal from an order disposing of a postjudgment motion under Rule 4 brings up for review the judgment and any intermediate order involving the merits and necessarily affecting the judgment, as well as the order appealed from.

(c) Except as provided in Rule 6-9 of the Rules of the Supreme Court and Court of Appeals, appeals in juvenile cases shall be made in the same time and manner provided for appeals from circuit court.

(1) In delinquency cases, the state may appeal only under those circumstances that would permit the state to appeal in criminal proceedings.

(2) Pending an appeal from any case involving a juvenile out-of-home placement, the circuit court retains jurisdiction to conduct further hearings.

(3) In juvenile cases where an out-of-home placement has been ordered, orders resulting from the hearings set below are final appealable orders:

(A) adjudication and disposition hearings;

(B) review and permanency planning hearings if the court directs entry of a final judgment as to one or more of the issues or parties and upon express determination supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. Rule 54(b); and

(C) termination of parental rights.

(d) All final orders awarding custody are final appealable orders.

(e) Appeals in criminal cases have priority over all other business. With respect to civil cases, appeals under subdivisions (a)(6), (a)(7), (a)(9), (c)(3), and (d) of this rule take precedence.

**HISTORY:** Amended July 12, 1982; amended March 18, 1985; amended November 11, 1991, effective January 1, 1992; amended November 8, 1993, effective January 1, 1994; adopted and amended July 10, 1995, effective January 1, 1996; adopted and amended effective March 4, 1999; amended January 27, 2000; amended February 1, 2001; amended June 7, 2001, effective July 1, 2001; amended March 13, 2003; amended May 18, 2006, effective July 1, 2006; amended October 9, 2008, effective January 1, 2009; amended June 3, 2010, effective July 1, 2010

**NOTES:** REPORTER'S NOTES TO RULE 2 (1995):
This rule is virtually identical to former Appellate Rule 2, although the title has been changed to more accurately reflect its content. Subdivision (c) has been modified to expressly include the statement that criminal appeals take precedence in the Supreme Court, as was the case under former Rule 36.2 of the Rules of Criminal Procedure. The Reporter's Notes prepared in connection with former Appellate Rule 2 are set out below.

ADDITION TO REPORTER'S NOTES TO RULE 2:
1. Act 38 of 1973, authorizing the Supreme Court to prescribe rules of civil procedure, provides that rights of appeal shall continue as authorized by law. Accordingly, in this rule the Court has preserved rights of appeal as conferred by superseded Ark. Stat. Ann. § 27-2101 (Supp. 1971), superseded § 27-2102 (Repl. 1962), and superseded § 31-165 (Repl. 1962). If, at the effective date of these rules, there are other statutes conferring rights of appeal from trial courts, they are not intended to be superseded.
2. An order dismissing a writ of garnishment is appealable. *Bank of Eudora v. Ross, 168 Ark. 754, 271 S.W. 703 (1925).*

ADDITION TO REPORTER'S NOTES, 1985 AMENDMENT:
Subsection (9) is added to Rule 2(a) to permit appeal to the Supreme Court of an order certifying a case as a class action under Rule 23, Ark. R. Civ. P. *See Ford Motor Credit Co. v. Nesheim, 285 Ark. 253, 686 S.W.2d 777 (1985).* The



Arkansas Code of 1987 Annotated Official Edition Court Rules 2012
(c) 1987-2012 by the State of Arkansas
All Rights Reserved.

*** Rules current with opinions posted through January 23, 2012 by the Arkansas Supreme Court and the Arkansas Court of Appeals ***
*** Annotations are current through January 25, 2012. ***

ARKANSAS RULES OF PROFESSIONAL CONDUCT
CLIENT-LAWYER RELATIONSHIP

*Ark. R. Prof. Conduct Rule 1.7* (2012)

Review Court Orders which may amend this Rule.

Rule 1.7. Conflict of interest: current clients.

   (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

      (1) the representation of one client will be directly adverse to another clients; or

      (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer,

   (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

      (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

      (2) the representation is not prohibited by law:

      (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

      (4) each affected client gives informed consent, confirmed in writing,

**NOTES:** COMMENTS.

GENERAL PRINCIPLES.
   [1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For definitions of "informed consent" and "confirmed in writing," see Rule 1.0(e) and (b).
   [2] Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing. The clients affected under paragraph (a)



1 of 1 DOCUMENT

Arkansas Code of 1987 Annotated Official Edition Court Rules 2012
(c) 1987-2012 by the State of Arkansas
All Rights Reserved.

\*\*\* Rules current with opinions posted through January 23, 2012 by the Arkansas Supreme Court and the Arkansas Court of Appeals \*\*\*
\*\*\* Annotations are current through January 25, 2012. \*\*\*

ARKANSAS RULES OF PROFESSIONAL CONDUCT
CLIENT-LAWYER RELATIONSHIP

*Ark. R. Prof. Conduct Rule 1.16*   (2012)

Review Court Orders which may amend this Rule.

Rule 1.16. Declining or terminating representation.

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if;

(1) the representation will result in violation of the rules of professional conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetrate a crime or fraud;

(4) a client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.   When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surren-

Case 3:11-cv-03057-PKH   Document 52-7   Filed 04/03/12   Page 15 of 15 PageID #: 264

Page 2
Ark. R. Prof. Conduct Rule 1.16

dering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

**NOTES:** COMMENTS.

[1] A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded. See Rules 1.2(c) and 6.5. See also Rule 1.3, Comment [4].

MANDATORY WITHDRAWAL.

[2] A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.

[3] When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 and 3.3.

DISCHARGE.

[4] A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.

[5] Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring self-representation by the client.

[6] If the client has severely diminished capacity, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and may take reasonably necessary protective action as provided in Rule 1.14.

OPTIONAL WITHDRAWAL.

[7] A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. Withdrawal is also justified if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted if the lawyer's services were misused in the past even if that would materially prejudice the client. The lawyer may also withdraw where the client insists on taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement.

[8] A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

ASSISTING THE CLIENT UPON WITHDRAWAL.

[9] Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers as security for a fee only to the extent permitted by law. See Rule 1.15.

RESEARCH REFERENCES

ARK. L. NOTES. Kilpatrick, Changing Firms or Offices: Doing it Right, 2002 Ark. L. Notes 39.

ARK. L. REV. Note, Henry, Walden & Davis v. Goodman: The Value of a Discharged Attorney's Contingent Fee Contract in Arkansas, *42 Ark. L. Rev. 549.*