IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID STEBBINS                                                    PLAINTIFF

vs.                              Case No. CV 11-3057

LEGAL AID OF ARKANSAS                                            DEFENDANT

**BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Comes now Defendant, Legal Aid of Arkansas ("Legal Aid"), and for its Brief In Support

of Motion For Partial Summary Judgment, states and alleges as follows:

**I.     INTRODUCTION**

Plaintiff's action against Legal Aid arises under Title III of the American With Disabilities

Act ("ADA"), which, in short, prohibits disability discrimination by private entities operating a place

of public accommodation.  42 U.S.C. § 12181 et seq.  By his Complaint, Plaintiff alleges that Legal

Aid discriminated against him because of an alleged disability (hereinafter referred to as the

"discrimination" claim), and failed to modify its policies and practices so as to reasonably

accommodate his alleged disability (hereinafter referred to as "failure to modify" claim).  (Dkt. No.

1).  By his Amended Complaints, Plaintiff further alleged that Legal Aid retaliated against Plaintiff

by refusing to represent him in regards to an appeal against Harp & Associates (an uninterested party

to the present matter).  (Dkt. No. 5).  Legal Aid has already moved for summary judgment on

Plaintiff's retaliation claim.  (Dkt. No 52 and 53).  The present motion only addresses Plaintiff's

discrimination and failure to modify claims.

As will be shown throughout this brief, Plaintiff bases his claims on unsupported and

speculative assumptions, which are insufficient for summary judgment purposes.  Beyond these

speculative assumptions, Plaintiff simply fails to provide any sufficient evidence to create a genuine issue of material fact. Accordingly, because no genuine issues of material fact exist, Legal Aid's Motion For Partial Summary Judgment should be granted.

## II.    BACKGROUND

On or about February 22, 2011, Plaintiff completed an application for legal services with Legal Aid to represent him in regard to his landlord's, Harp & Associates (the "landlord"), attempts to evict Plaintiff from his apartment (the "Eviction"). (Exhibit C). From on or about February 24, 2011 to June 16, 2011, Legal Aid represented Plaintiff in the Eviction, with Michael Loggains ("Loggains"), an attorney-at-law and an employee of Legal Aid at its Arkansas office, acting as Plaintiff's attorney. (Exhibits C and F).

During Legal Aid's representation of Plaintiff, Plaintiff continuously requested Legal Aid to represent him in multiple other matters. (Exhibit B, Affidavit of Michael Loggains ("Loggains Affidavit")). Loggains declined each of these matters and continuously reminded Mr. Stebbins that Legal Aid would only represent him on the matters that Legal Aid accepted; that he would have to fill out an application for service for Legal Aid to consider representing him in any other matter. *Id*. On February 28, 2011, Loggains, in response to a prior letter from Plaintiff, wrote Plaintiff a letter stating that due to the limited staff and resources Legal Aid has that it must limit its representation to the cases Legal Aid accepts. (Exhibits D and E, respectively). Still, on many occasions, Plaintiff sought advice on his other existing pro se cases. (Exhibit B, Loggains Affidavit). Loggains questioned the merit of many of the cases for which Plaintiff sought representation or advice but, again, reminded Plaintiff that Legal Aid's representation of Plaintiff was limited to the Eviction and

that an application for legal services would need to be completed. *Id*. Plaintiff never completed an additional application for legal services for any of the other matters. *Id*.

As for the Eviction, because Plaintiff was receiving Federal housing assistance, Plaintiff's landlord could only evict Plaintiff for "just cause." *Id*. On or about March 18, 2011, Legal Aid represented Plaintiff in front of the Federal Housing Authority regarding his eviction. *Id*. Legal Aid was successful, and Plaintiff's landlord agreed to not pursue the eviction but, rather, decided to not renew Plaintiff's lease, which expired on June 30, 2011. *Id*.

On June 16, 2011, after examining the landlord's decision to not renew Plaintiff's lease, Loggains wrote Plaintiff advising him that his landlord was legally within its right to not renew the lease, and that "[t]he legal advice provided up to this time concludes [Legal Aid's] services to you at this time. Therefore, I am closing your file." (Exhibit F). Within that same letter, Loggains, again, informed Plaintiff that if he needed legal assistance in another matter to contact Legal Aid's hotline to reapply for services. *Id*. Legal Aid closed Plaintiff's file.

On June 18, 2011, Plaintiff faxed Legal Aid a letter disagreeing with Loggains' opinion – that his landlord had a right to not renew the lease – and asked Legal Aid to reconsider its decision to close his file. (Exhibit G). Within that letter, Plaintiff asserted that the landlord had no right to not renew the lease based on, what will be referred to as, Plaintiff's "unilaterally imposed contract theory." *Id*. Plaintiff's unilaterally imposed contract theory is Plaintiff's self-made theory of law whereby he asserts, in short, that his landlord had entered into a contract with him by and through acceptance of an additional $8.00 in rent money, which contract required the landlord to submit all disputes to arbitration when requested by the Plaintiff, and if landlord did not respond to Plaintiff's

request for arbitration, Plaintiff automatically won and was entitled to $75,000 in damages.[1]  *Id*. Loggains disagreed with Plaintiff's reasoning, and considered Plaintiff's legal theory frivolous. (Exhibit B, Loggains Affidavit).  On June 20, 2011, Loggains wrote Plaintiff declining to represent him any further.  (Exhibit H).

On June 22, 2011, Plaintiff emailed Loggains requesting that he be reinstated into Legal Aid's clientele immediately.  (Exhibit I).  Within that email, Plaintiff recognized that Loggains disagreed with the "morality" of his case against his landlord, but concluded that Loggains' decision to not represent him amounted to disability discrimination.  *Id*.  Plaintiff went on to state that Aspergers is a "neurological disability that makes it difficult for me to predict when my words may offend people. This means that I am entitled to accommodations under Title III of the Americans with Disabilities Act. . . the best thing you can give me is to ignore anything that might offend you . . ."  *Id*.  By that same email, Plaintiff speculated that: "Considering my Aspergers, how was I supposed to know that you would become so offended by the nature of this case – this one case – that you would drop me from your clientel [sic] altogether."  *Id*.  Loggains did not respond to Plaintiff's email.

On July 20, 2011, Plaintiff filed his Complaint. (Dkt. No. 1).

---

[1]Plaintiff's unilaterally imposed contract theory has been held frivolous and meritless. See *Stebbins v. Microsoft*, No. 2:11-CV-1362 (W.D. Wash. 2011)(finding plaintiff's claims "devoid of merit" and "wildly untethered from any valid interpretation of . . . law"); *Stebbins v. Google*, Inc., 2011 U.S. Dist. LEXIS 125701 (N.D. Cal. Oct. 27, 2011) (dismissing plaintiff's complaint "because Plaintiff has stated an indisputably meritless legal theory, and because plaintiff's factual contentions are clearly baseless"); *Stebbins v. Texas*, 2011 U.S. Dist. LEXIS 146248 (N.D. Tex. Oct. 24, 2011) (dismissing case as frivolous because case "has no basis in law or fact," and is based on "fantastic or delusional scenarios that are clearly irrational and incredible").

III.   **STANDARD OF REVIEW**

A.   **Summary Judgment**

"Summary judgment is appropriate if the record, viewed in a light most favorable to the nonmoving party, contains no questions of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." *Stone Motor Co. v. GMC*, 293 F.3d 456, 465 (8th Cir. 2002). The moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Once, however, the moving party demonstrates that no genuine dispute on material facts exist, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986). "The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co.*, 475 U.S. 574.

B.   **Summary Judgment Under The ADA**

As an extension of the above-cited summary judgment standards, the Eighth Circuit clearly recognizes that self-serving statements and conjecture will not suffice to withstand a motion for summary judgment in an ADA case. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1078 (8th Cir. 2006); *Heaser v. Toro Co.*, 247 F.3d 826, 832 (8th Cir. 2001); *Helfter v. UPS*, 115 F.3d 613, 616 (8th

Cir. 1997); *Reynolds v. Stovall*, 2012 U.S. Dist. LEXIS 49963, 18-19 (W.D. Ark. Apr. 10, 2012); *Argenyi v. Creighton Univ.*, 2011 U.S. Dist. LEXIS 108764 (D. Neb. Sept. 22, 2011).

In *Mershon,* the Court, affirming the trial court's grant of summary judgment against a plaintiff in an ADA case, stated: "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." 442 F.3d at 1078. In *Helfter*, the Court found that plaintiff's conclusory deposition statements were insufficient to establish a "disability" under the ADA for summary judgment purposes. 115 F.3d at 616. In *Heaser*, the Court held that plaintiff failed to make a prima facie showing under the ADA as her case was based on nothing more than her own conjecture. 247 F.3d at 832. In *Reynolds*, the Court stated "plaintiff's own self-serving statements about an alleged disability cannot serve as the basis for surviving a summary judgment motion. More evidence is required." 2012 U.S. Dist. LEXIS 49963 at *19.

As shown below, like *Mershon, supra, Helfter, supra, Heaser, supra*, and *Reynolds, supra*, Plaintiff provides nothing more than self-serving statements and conjecture to support his case against Legal Aid, and summary judgment against Plaintiff is required.

## IV.    APPLICABLE LAW AND ARGUMENT

Legal Aid contends that the entirety of Plaintiff's case is based on self-serving statements and conjecture; that Plaintiff, first, fails to set forth sufficient evidence that he is "disabled" within the meaning of the ADA and, thus, his discrimination and failure to modify claims must fail as a matter of law. Assuming, arguendo, that Plaintiff can present a genuine issue of material fact as to whether he is "disabled" as provided by the ADA, Legal Aid contends that Plaintiff fails to put forth any

evidence – again, aside from self-serving statements and conjecture – to establish the requisite prima facie elements for his discrimination and his failure to modify claims.

### A.     The ADA Framework

The ADA prohibits discrimination in three areas: employment ("Title I"); public services ("Title II"); and public accommodations ("Title III").  *See, e.g.*, 42 U.S.C. §§ 12202, 12205, 12203. Plaintiff files his suit under Title III – public accommodations.  The general rule under Title III regarding discrimination is that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 USCS § 12182(a). The ADA prohibitions of discrimination include:

> Denial of participation. It shall be discriminatory to subject an individual . . . on the basis of a disability . . . to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 USCS § 12182(b)(1)(a)(I) (i.e., Plaintiff's discrimination claim); and

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 USCS § 12182(b)(2)(A)(ii) (i.e., Plaintiff's failure to modify claim).

**B.    Plaintiff Fails To Prove A Disability**[2]

Plaintiff asserts that he suffers from Aspergers' Syndrome, and that same is a disability under the ADA. "The presence or absence of a disability is a threshold question." *Helfter,* 115 F.3d 613, 616.  To qualify as a "disability" under the ADA, a plaintiff must either have a

> (A) physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 USCS § 12102.

*1. An "Impairment"*

Under the ADA, a mental impairment means "[a]ny mental or psychological disorder, such as an intellectual disability . . . organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 CFR 1630.2(h)(2).  To prove he has an impairment, Plaintiff must offer more than conclusory and speculative allegations. *Mershon,* 442 F.3d 1069, 1078. Mere allegations regarding the effects of an alleged impairment are insufficient to establish an actual impairment; an actual diagnosis is required.  *Tozzi v. Advanced Med. Mgmt., Inc.,* 2001 U.S. Dist. LEXIS 17910,*33-34 (D. Md. May 24, 2001); see also *Millet Sanchez v. ACAA,* 247 F. Supp. 2d 61, 71 (D.P.R. 2003)("generic, subjective evidence" is insufficient to prove a disability).

Although Plaintiff claims that his alleged Asperger's causes him to be socially awkward and

---

[2]Legal Aid recognizes that the Americans With Disabilities Act Amendment Act (the "ADAA") amended the ADA requiring that a "disability" shall be construed in favor of broad coverage.  See 42 USCS § 12102(4)(A).  All references to the ADA herein include the amendments. Legal Aid contends, however, that the ADAA does not permit Plaintiff to proceed with an ADA claim in the complete absence of any evidence.

tactless, he has not introduced any evidence that would prove he suffers from Aspergers or any mental impairment.  By and through discovery, Plaintiff has not produced any medical documents diagnosing him with Aspergers' Syndrome, nor has he listed any individuals qualified to testify as to his alleged Aspergers' Syndrome, nor has he proffered any expert affidavits in support of his alleged impairment.

Plaintiff's self-serving statements as to his alleged impairment and the effects thereof are simply insufficient.

### 2.  An Impairment That "Substantially Limits" A Major Life Activity

The ADA further requires that the "impairment" *substantially limits* a major life activity. 42 USCS § 12102.  To "substantially limit" means:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. 1630.2(h)(2)(ii).

By his Amended Complaint, Plaintiff alleges that his Aspergers' Syndrome substantially limits the major life activity of communication.  (Dkt. No. 8).  By his deposition, Plaintiff further raised work, socialization and reproduction as other major life activities that his alleged disability substantially limits. (Exhibit A, Plaintiff Depo, 160:5-10; 162:10-19; 164:19-23).  For purposes of this motion only, Legal Aid does not contest whether communication, socialization, working, and reproduction are major life activity, but contests Plaintiff's lack of proof that his alleged impairment

*substantially limits* a major life activity.[3]

When asked to describe how his alleged disability "substantially limits" the major life activities of communication, socialization, working and reproduction, Plaintiff stated:

> It makes it difficult for me to socialize. Makes it difficult for me to find a job. It also makes it difficult for me to keep a job, make friends. Its difficult – I mean, because people get upset at me, for saying things that they don't like.

(Exhibit A, Plaintiff Depo, 160:5-9).

Aside from these overly broad, self-serving statements, Plaintiff fails to offer any probative evidence that his alleged impairment "substantially limits" his ability to communicate, work, interact with others, or reproduce "as compared to most people in the general population." To the contrary, Plaintiff is clearly able to communicate and interact with others with no difficulty as proof of the numerous pleadings he has filed in this case, and his nearly three hour uneventful deposition. (Exhibit A, Plaintiff Depo). Loggains states that Plaintiff is intelligent and that he had little trouble communicating with him. (Exhibit B, Loggains Affidavit). Plaintiff states that he has a high school degree, has completed over two years of college education, had "very good grades" in college and was on "good terms with [his] teachers." (Exhibit A, Plaintiff Depo, 18:12-25, 21:18 - 22:19). Further, Plaintiff has friends, has satisfactorily held employment (certain jobs he quit on his own volition), and lives at and maintains his own residence (although presently in the Boone County Jail). (*Id*. at 9:2 - 10:11, 24:11-12). As for Plaintiff's vague reference to his ability to procreate, Plaintiff

---

[3]Applicable regulations refer to "socialization" as "interacting with others." 29 CFR 1630.2(h)(2)(i)

makes clear that he can reproduce, but cannot find a willing mate to engage in sexual relations.[4]  In

any event, pertinent case law makes clear that mere assertions of a sexual activity limitation without

medical evidence are insufficient to create a material fact issue over whether the Plaintiff is in fact

disabled.  *Contreras v. Suncast Corp.*, 237 F.3d 756, 764 (7th Cir. 2001).

Plaintiff's conclusory statements regarding the "difficulty" he may have does not equate to

a "substantial limitation" as "compared to most people in the general population."  Plaintiff's self-

serving statements are insufficient, particularly in light of the above contradicting evidence, to

withstand a properly supported motion for summary judgment.  *Helfter*, 115 F.3d 613, 616.

### 3.  A Record Of An Impairment

The ADA permits an individual to qualify a disability by having a "record of an impairment."

42 USCS § 12102.  "An individual will be considered to have a record of a disability if the

individual has a history of an impairment that substantially limited one or more major life activities

when compared to most people in the general population, or was misclassified as having had such

an impairment."  29 C.F.R. 1630.2(k)(2).

As stated in the immediately preceding subsections, and incorporated here as set out in word

for word, Plaintiff has failed to offer any probative evidence to prove a *history* of an *impairment* that

*substantially limits* a major life activity – all required for a finding of a "record of an impairment."

---

[4]It is and was understood that Plaintiff is not asserting that he is unable to procreate
because of his alleged disability but rather is, admittedly, unable to obtain a female mate willing
to engage in sexual relations, see Exhibit A, Plaintiff Depo, 164:19-23, which is not a major life
activity.  *See Pedroza v. Autozone, Inc.*, 536 F. Supp. 2d 679, 695 (W.D. Tex. 2008).  Regardless,
Plaintiff fails to set forth any evidence that his impairment *substantially limits* any major life
activity.

Plaintiff's bald accusations are insufficient to prove he has a "record of an impairment." *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635 (2d Cir. N.Y. 1998)(holding that a plaintiff's record of hospitalization was, by itself, insufficient to show a record of an impairment under the ADA).

### 4. Being Regarded As Having Such An Impairment

Lastly, the ADA permits a plaintiff to establish an impairment by showing he was regarded as having such an impairment. 42 USCS § 12102.

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 USCS § 12102(3)(A). Therefore, determining whether a plaintiff is "regarded as" having an impairment requires the plaintiff to make the necessary showing that the alleged adverse action was *prohibited* by the ADA. *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012)(requiring direct evidence of the prohibited action, i.e., discrimination, before plaintiff is considered "regarded as" disabled); *Jenkins v. Medical Labs. of E. Iowa, Inc.*, 2012 U.S. Dist. LEXIS 101142 (N.D. Iowa July 20, 2012)(deny the ADA claim because the alleged prohibited action was not due to a disability); *Wurzel v. Whirlpool Corp.*, 2012 U.S. App. LEXIS 8640 (6th Cir. Ohio 2012) (requiring that plaintiff first meet "otherwise qualified" element of ADA to determine whether alleged conduct was prohibited by the ADA).

As shown below, Plaintiff fails to show that Legal Aid subjected Plaintiff to any action *prohibited* by the ADA. Moreover, as regards Plaintiff's failure to modify claim, the ADA makes clear that a place of "public accommodation under title III . . . need not provide a reasonable

-12-

accommodation or a reasonable modification to policies, practices, or procedures to an individual

who meets the definition of disability . . . solely under [the "regarded as" prong]."  42 USCS §

12201(h).  "The law does not impose a duty upon [an] employer to accommodate what turns out to

be a fictional impairment."  *Powers v. USF Holland, Inc.*, 2010 U.S. Dist. LEXIS 49109 *12-14

(N.D. Ind. May 13, 2010).  Thus, if Plaintiff proves he is "disabled" only under the "regarded as"

prong, Legal Aid has no duty to modify any alleged discriminatory policy or practice, and Plaintiff's

failure to modify claim fails as a matter of law.  *Id.*

Accordingly, because Plaintiff is unable to provide any sufficient evidence, above and beyond

conclusory allegations, to prove he is disabled – an impairment, an impairment that substantially

limits a major life activity, a record of an impairment, or being regarded as having an impairment

– there is no genuine issue for trial, and summary judgment is appropriate.  *Matsushita Elec. Indus.*

*Co.* 475 U.S. 574, 587; *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)( there must be more than

"speculation, conjecture, or fantasy"); *Mershon*, 442 F.3d 1069.

### C.    Plaintiff's Discrimination Claim Fails As Plaintiff Fails To Show That Legal Aid Took Any Adverse Action Against Him *Based* On His Alleged Disability

As mentioned above, assuming, arguendo, that Plaintiff is able to present a genuine issue of

material fact as to whether he is disabled under the ADA, summary judgment is still appropriate as

Plaintiff fails to provide any evidence, aside from self-serving allegations and speculation, for his

discrimination and failure to modify claims.

In order to establish a prima facie case of discrimination, Plaintiff must show:

(1) that he is disabled as that term is defined by the ADA;
(2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and

(3) the defendant employed a took adverse action against the plaintiff that was based upon the plaintiff's disability[5]

*Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); see also *Fortyune v. American Multi-Cinema, Inc.,* 364 F.3d 1075, 1082 (9th Cir. 2004); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003); 42 U.S.C. § 12182(a).

For purposes of this motion only, Legal Aid does not contest that it is a place of public accommodation. Thus, assuming, arguendo, that Plaintiff satisfies the first two elements, the issue then becomes whether Plaintiff has satisfied his burden in showing that Legal Aid took adverse action against Plaintiff *based* on his alleged disability. In disability discrimination cases, the focus is whether "a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals. The key element is discriminatory intent." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004).

Plaintiff alleges that Legal Aid's adverse action was its decision to not represent him any longer. (Exhibit H). It is Plaintiff's burden to prove his prima facie discrimination case. *Amir*, 184 F.3d at 1028. Plaintiff offers no evidence, whatsoever, that Legal Aid's decision to no longer represent him was *based* on discrimination but, rather, speculatively *assumes* that it was because

---

[5]An additional element – that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation – is sometimes included in case law, but has been removed from this analysis because it applies only in a failure to modify claim, which is analyzed below. See *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006)(the prima facie element of intentional discrimination are different from a failure to accommodate claim); *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004)(failure to accommodate is a separate form of prohibited discrimination); *Shepherd v. United States Olympic Comm.*, 464 F. Supp. 2d 1072, 1090 (D. Colo. 2006) (the "prima facie elements of an ADA claim depend on a number of factors, including the alleged theory of discrimination").

Legal Aid was discriminating against him.  Plaintiff bases this speculation on nothing more than the

way others have allegedly treated him all his life.  Plaintiff stated:

> Q.     Okay.  So is it merely the fact that [Loggains] didn't explain why he's not going to represent you that you assume that it was because of your disability?
>
> A.     Well, I'm assuming, based on numerous previous incidents. I'm putting two and two together.
>
> Q.     What previous incidents are you talking about?   Are you talking about incidents with him?
>
> A.     Incidents with humanity.
>
> Q.     Oh.
>
> A.     Incidents with society.
>
> Q.     Okay.  Well, is there any - - of his prior behavior that suggests that he had some sort of malintent against your disability?
>
> A.     Malinent, no.  A failure to - - but just not - - apathy.  Perhaps apathy and not being - - and I just don't feel like providing reasonable accommodations for your Asperger's Syndrome. Ninety-nine percent of the time, that's what happened.
>
> . . .
>
> Q.     Okay.   The - - the previous incidents you're referring to, they're from other people.  Is that correct?
>
> A.     Well, they're - - well, they're part of a group that Michael Loggains is also a group of.  It's called society.
>
> Q.     All right.  So are you judging Michael Loggains, based on the way that the rest of the world - -
>
> A.     I'm judging a homo sapien, based on previous incidents with homo sapiens.

(Exhibit A, Plaintiff Depo, 67:7-69:6).

By his discovery responses, Plaintiff affirms that he does not know "why" Legal Aid chose to no longer represent him, and articulates the same generic, assumptive reasoning in support of his allegations of discrimination; he stated:

> Obviously, I have offended [Legal Aid] somehow and to this day, I don't know why they hate me. That is why it is discriminatory; I have Asperger Syndrome . . . I'm <u>always</u> offending people even when I mean only to tell the truth.

(emphasis in original)(Exhibit J, Plaintiff's Responses To Interrogatories and Requests For Production of Documents, Response to Interrogatory No. 4).

As clearly shown, Plaintiff bases his discrimination claim on nothing more than an unsupported assumption – based on the way that society has allegedly treated him. The fact that Legal Aid chose to no longer represent Plaintiff does not serve as sufficient proof to show that that decision was *because* of his alleged disability; the fact that "society" in-large may have discriminated against Plaintiff does not serve as sufficient proof that Legal Aid discriminated against Plaintiff *because* of his alleged disability. Plaintiff's entire case is based on the erroneous premise that *any* alleged adverse action taken against him is *because* of his disability.

Plaintiff's speculation fails to take into account the fact that Plaintiff's subsequent requests for representation were wholly without merit; fails to take into account that Legal Aid had limited staff and resources to direct toward such frivolous cases; fails to take into account that Plaintiff never completed an application for service necessary for Legal Aid to even consider representation; and fails to take into account that Legal Aid had successfully represented Plaintiff in his Eviction. (Exhibit B, Loggains Affidavit). Nonetheless, it is Plaintiff's burden to prove his case, not Legal

Aid's burden to disprove it.

Plaintiff fails to establish his prima facie case; specifically that Legal Aid took an adverse action against him *based* on his disability.  Plaintiff's discrimination claim must fail.

### D.    Plaintiff's Failure To Modify Claim Fails As Plaintiff Fails To Show That A Reasonable Modification Was *Necessary*

Plaintiff asserts that he requested a reasonable modification in Legal Aid's policy and practices – that Legal Aid should ignore anything that he says that offends them.  (Dkt. No. 1 and 8).  For a failure to modify claim, the ADA provides, in pertinent part, that:

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 USCS § 12182(b)(2)(A)(ii).

The ADA and applicable case law require that for a plaintiff to establish a prima facie case for a failure to modify claim, he must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff by failing to make a requested reasonable modification that is necessary to accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001); *Amir v. St. Louis*, 184 F.3d 1017, 1027 (8th Cir. 1999); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003).  Again, assuming, arguendo, that Plaintiff satisfies the first two elements, the issue then becomes whether Plaintiff has satisfied his burden in showing that his requested

accommodation, i.e., ignoring offensive comments, was *necessary* to accommodate Plaintiff's alleged disability.

For a requested modification to be "necessary," a plaintiff must show that he would be effectively excluded from the public accommodation without the modification. *PGA Tour, Inc.*, 532 U.S. 661, at 683 n.38 (2001)(the ADA's reasonable modification statute contemplates . . .whether it is "necessary" for the disabled individual . . ."); *Amir v. St. Louis*, 184 F.3d 1017, 1027 (8th Cir. 1999)(finding that the requested accommodation was not related to plaintiff's disability, i.e., it was not necessary for plaintiff access to the public accommodations' services); *Argenyi v. Creighton Univ.*, 2011 U.S. Dist. LEXIS 108764 (D. Neb. Sept. 22, 2011)("a modification . . . is "necessary" only if the disabled person can show the failure to provide it would effectively exclude the disabled person from the place of public accommodation); *Murphy v. Bridger Bowl*, 150 Fed. App'x 661, 663 (9th Cir. 2005) (plaintiff's ADA claim failed for failure to show accommodations were necessary because even though accommodations may enhance plaintiff's ability to learn, plaintiff's doctor did not suggest that the accommodations were "necessary" for plaintiff to learn); 42 U.S.C. § 12182(b)(2)(A)(ii)

Plaintiff fails to put forth any proof that the requested modification was necessary; that is, Plaintiff fails to show that he would be excluded from Legal Aid's services without the modification. Rather, Plaintiff again bases the alleged necessity of his requested accommodation on how he has allegedly been treated by the rest of the world. Plaintiff stated:

> Q:    What proof do you have that – that the alleged modification
>       you requested was necessary for Legal Aid to accommodate
>       your disability?

> A:     The fact that this sort of – well, modification of policy is always necessary for me to, like, eat at a restaurant without offending the waitress. Go to the University of Arkansas without them feeling threatened. Be here, at the jail, without me getting locked down, every two minutes, for smarting off to the jail staff. The fact that its needed – that accommodation is needed for just about everything I do.
>
> Q:     Okay.  Well – an you're bringing up instances that are –
>
> A:     Again, I've mentioned that my previous history dealing with society, in general, will cause me to put two and two together here.

(Exhibit A, Plaintiff Depo, 128:23 - 129:13).  Indeed, Plaintiff is unable to identify any incident which would even arguably cause need for Legal Aid to modify an alleged discriminatory policy or practice.  Plaintiff stated "to this day, I do not know what upset [Legal Aid] so much that they would send me a letter saying they would not assist me, on any matter." *Id*. at 24:22-25.  When Plaintiff was asked how he knew he said something that offended Legal Aid, he again responded with a reference to the rest of the world; he stated: "[b]ecause, mostly, its just – 99 percent of the time, that happens, so it's a matter of – it's a matter of past experience yield a preponderance of the evidence." *Id*. at 25:1-6.  Needless to say, Plaintiff's history of dealings with the rest of society is irrelevant here.

Not to be overlooked is Plaintiff's underlying, yet unwarranted, presumption that a modification needs to be made to Legal Aid's policies and practices.  This is not so.  It is Legal Aid's policy and practice to provide legal services to all individuals "regardless of age, race, sex, religion, national origin, color, and disability."  (Exhibit B, Loggains Affidavit).  Loggains, at all times relevant to Plaintiff, acted in accordance with that policy and practice.  *Id*.  Therefore, it is not "necessary" for Legal Aid to modify its policies or practices because such policies and practices are not discriminatory, and do not exclude Plaintiff from using Legal Aid's services. See *Logan v. Am.*

*Contract Bridge League*, 173 Fed. App'x 113, 117 (3d Cir. 2006) (a plaintiff fails to state a meritorious claim under a failure to modify claim where the accommodation is not necessary to give him access to the public accommodation's services). Recall, Legal Aid successfully represented Plaintiff in his Eviction. (Exhibit B, Loggains Affidavit). Plaintiff even stated that he was "pleased" with Legal Aid's representation. (Exhibit D). Yet, now Plaintiff would have the Court believe that it is *necessary* for Legal Aid to modify its policies and practices in order to represent him in a subsequent matter. Plaintiff's position is inconsistent.

Additionally, Plaintiff asserts that his alleged disability makes it "difficult" for him to communicate and interact with others. (Exhibit A, Plaintiff Depo, 160:5-9). In *PGA Tour, Inc.*, *supra*, the Supreme Court highlighted the scope of the *necessity* of the requested modification/accommodation when the alleged disability only makes a major life activity "difficult." There, the Court, holding that the golfer/plaintiff's use of a golf cart was necessary, stated that golfer/plaintiff's "claim . . . differs from one that might be asserted by players with less serious afflictions that make walking the course uncomfortable or *difficult*, but not beyond their capacity. In such cases, an accommodation might be reasonable but not *necessary*." (emphasis added) *PGA, Tour*, 532 U.S. at 682.

Here, the evidence demonstrates that Plaintiff's alleged limitations – communication and interacting with other – are not beyond his capacity. Recall, Plaintiff had little trouble communicating with Loggains, and did nothing to offend Loggains. (Exhibit B, Loggain Affidavit). Loggains considered Plaintiff intelligent. *Id*. Moreover, Plaintiff has obtained a high school degree, has completed over two years of college education, and had "very good grades" in college and was

on "good terms with [his] teachers." (Exhibit A, Plaintiff Depo, 18:12-25, 21:18 - 22:19). Plaintiff further testified that he has friends, has satisfactorily held employment (certain jobs he quit on his own volition), and lives at and maintains his own residence (although presently in the Boone County Jail). *Id*. at 9:2 - 10:11, 24:11-12.

As stated in *PGA Tour, Inc*., *supra*, even assuming that Plaintiff has an alleged disability that makes communicating and interacting with other difficult, it is not "necessary" to modify a policy or practice based on limitations, which, although may perhaps be "difficult" for Plaintiff, are clearly not beyond his "capacity." *PGA Tour, Inc*., makes it clear that Legal Aid had no duty to modify its policies and practices.

Plaintiff offers no probative proof as to the necessity of his alleged requested modification, but, rather, speculates as to the motive of Legal Aid's actions based on how the rest of the world has allegedly treated him and, therefrom, wrongfully assumes such modification is necessary. Such proof is insufficient. Moreover, Plaintiff's alleged disability difficulties are not the type of difficulties for which a modification is "necessary."

## V.    CONCLUSION

Plaintiff bases his entire case on unsupported conjecture and speculation. Plaintiff fails to prove he suffers a disability as contemplated by the ADA, and fails to prove his prima facie case on his discrimination and failure to modify claims.

WHEREFORE, Legal Aid of Arkansas prays that its Motion For Partial Summary Judgment be granted, for its attorney's fees and costs associated with the filing and argument of this motion, and for all other relief it may be entitled.

LEGAL AID OF ARKANSAS

BY:   /s/ J. David Dixon
          Don A. Taylor            #89139
          J. David Dixon           #05251
          DAVIS, CLARK, BUTT, CARITHERS
              & TAYLOR, PLC
          19 E. Mountain Street
          P.O. Box 1688
          Fayetteville, AR  72702-1688
          Telephone: (479) 521-7600
          Facsimile: (479) 521-7661
          Email: ddixon@davis-firm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of September, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System.  I hereby certify that I have mailed the document by the United States Postal Service to the following non CM/ECF participants:

David Stebbins
Boone County Jail
5800 Law Drive
Harrison, AR 72601

By:   /s/ J. David Dixon
          Don A. Taylor            #89139
          J. David Dixon           #05251
          DAVIS, CLARK, BUTT, CARITHERS
              & TAYLOR, PLC
          19 E. Mountain Street
          P.O. Box 1688
          Fayetteville, AR  72702-1688
          Telephone: (479) 521-7600
          Facsimile: (479) 521-7661
          Email: ddixon@davis-firm.com

-22-